UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00025-GNS

JOHN R. BOUSTANI                                                                                           PLAINTIFF

v.

GENERAL MOTORS, LLC; and
BRIAN PALMER                                                                                              DEFENDANTS

## MEMORANDUM OPINON AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 4), Plaintiff's Motion for Leave to File Amended Complaint (DN 6), Plaintiff's Motion to Hold Defendant's Motion in Abeyance (DN 7), and Plaintiff's Motion to Remand (DN 8). The motions are ripe for decision. For the reasons provided below, Plaintiff's motion to remand is **GRANTED**, and the remainder of the motions are **DENIED AS MOOT**.

### I.     BACKGROUND

Plaintiff John R. Boustani ("Boustani") was employed by Defendant General Motors LLC ("GM") in its Corvette assembly plant in Bowling Green, Kentucky, and at the time of his termination was under the supervision of Defendant Brian Palmer ("Palmer"). (Compl. ¶¶ 1-3, 9, DN 1-1). Boustani and Palmer are residents of Warren County, Kentucky, and GM is incorporated in Delaware with its principal office in Detroit, Michigan. (Compl. ¶¶ 1-3; Notice Removal 1, DN 1).

Boustani claims that when he arrived at the Bowling Green assembly plant in 2008 after decades of working his way through the ranks of GM, he was "repeatedly harassed, cursed, and threatened with termination" while under the supervision of Tony Lawson. (Compl. ¶ 12).

Boustani further alleges he "became the subject of racial slurs, derogatory remarks, and discriminatory conduct" from the United Auto Workers union president, Eldon Renault. (Comp. ¶ 15). Despite these issues, Boustani states that he had a good working relationship with his quality manager, Steve Grilli ("Grilli"), and was not subject to any discipline while under Grilli's supervision. (Compl. ¶ 18). That changed when Palmer was made quality director upon Grilli's retirement. (Compl. ¶ 19). As Boustani alleges, "[f]rom the first day on the job, it became clear that Palmer disliked [Boustani]. Palmer treated [Boustani] as if he were incompetent because of his Lebanese accent." (Compl. ¶ 20). Palmer also allegedly made derogatory comments concerning Boustani's speech and accent. (Compl. ¶ 21).

On March 15, 2018, GM notified Boustani that he was being terminated for "creating a hostile work environment by engaging in aggressive behavior by yelling repeatedly, pointing [his] finger, and threatening to fire [an employee]." (Compl. ¶ 23 (alterations in original)). Boustani denied the allegations in the letter and appealed his termination through GM's open-door policy. (Compl. ¶¶ 23-24). Following the denial of his appeal, Boustani filed a charge with the Kentucky Commission on Human Rights and was issued a right to sue letter on November 7, 2018. (Compl. ¶¶ 24-25).

Boustani initially filed this action in Warren Circuit Court on January 30, 2019, alleging violations of the Kentucky Civil Rights Act ("KCRA") and asserting claims of outrageous conduct, intentional infliction of emotional distress ("IIED"), and defamation. (Compl. ¶¶ 26-42). Defendants subsequently removed this action to this Court claiming that Palmer had been fraudulently joined as a defendant to defeat diversity jurisdiction. (Notice Removal 2, DN 1). Palmer now contends Boustani's claims must be dismissed because he was not Boustani's employer under the KCRA, any defamatory statements made by him were never published, and

2

Boustani has failed to allege any outrageous conduct. (Pl.'s Mem. Supp. Mot. Dismiss 2, DN 4-1).

In response to Palmer's motion, Boustani seeks leave to amend the Complaint to add a fourth count against Palmer for retaliation in further violation of the KCRA. (Pl. Mot. Leave File Am. Compl. 1, DN 6; Pl.'s Mot. Leave File Am. Compl. Ex. 1, at 6-7, DN 6-1). Boustani contends "Kentucky Law clearly allows an individual claim to be asserted against a supervisor who retaliates against an employee for filing a complaint regarding a discriminatory practice." (Pl.'s Mot. Leave File Am. Compl. 2). Boustani also seeks to hold Palmer's motion in abeyance "[b]ecause there is a pending issue regarding federal court jurisdiction, [that] the Court hold in abeyance motion to dismiss until a decision has been rendered on subject matter jurisdiction." (Pl.'s Mot. Hold Defs.' Mot. Abeyance ¶ 3, DN 7 [hereinafter Pl.'s Mot. Abeyance]). Finally, Boustani moves to remand this matter to state court arguing that Palmer was properly joined and that the parties in this case are not completely diverse. (Pl.'s Mot. Remand ¶¶ 6-7). Palmer urges the Court to deny Boustani's amendments as futile in light of their motion to dismiss and to deny his motion to remand because no viable claims against Palmer have been asserted. (Def.'s Resp. Pl.'s Mot. Amend 1, DN 9; Def.'s Resp. Pl.'s Mot. Remand 1, DN 11).

## II. DISCUSSION

### A. Plaintiff's Motion to Remand

Boustani has moved to remand this matter to state court on the basis that this case was improperly removed. (Pl.'s Mot. Remand 2-3, DN 8). Defendants contend that Palmer was fraudulently joined as a party to this action to defeat diversity and preclude removal to federal court. (Notice Removal 2-4, DN 1; Defs.' Resp. Pl.'s Mot. Remand 2-6, DN 11).

As a preliminary matter, this Court must determine whether this case was properly removed based on diversity jurisdiction under 28 U.S.C. § 1332. While GM is diverse from Boustani, both Boustani and Palmer are Kentucky residents, which would destroy complete diversity between the parties. (Comp. ¶¶ 1-3). If Palmer were fraudulently joined, diversity jurisdiction would exist and removal would be proper. If Palmer were properly joined, this case would not be subject to removal, and the Court would have to remand this matter to state court.

The Sixth Circuit has held that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* (citing *Alexander*, 13 F.3d at 949). Therefore, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander*, 13 F.3d at 949 (internal quotation marks omitted) (citation omitted). In determining whether a non-diverse defendant has been fraudulently joined, "all disputed questions of fact and ambiguities in the controlling state law [should be resolved] in favor of the nonremoving party." *Id.* (alteration in original) (internal quotation marks omitted) (citations omitted).

The removing party bears the burden of establishing fraudulent joinder—a burden that has been described as "a heavy one." *Id.*; *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d 931, 937 (E.D. Ky. 2012) (internal quotation marks omitted) (citation omitted). Moreover, as courts within the Sixth Circuit have recognized, "[t]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6) . . . ." *Fugate v. Babcock & Wilcox Conversion Servs., LLC*, No. 5:14-CV-

00172-TBR, 2015 WL 1758063, at *2 (W.D. Ky. Apr. 17, 2015) (internal quotation marks omitted) (citation omitted). "An assertion of fraudulent joinder must 'be directed toward the joinder, not to "the merits of the action as an entirety."'" *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d at 938 (citation omitted).

In the Complaint, Boustani asserts violations of the KCRA. (Compl. ¶¶ 26-32). As he alleges and the parties do not appear to dispute, GM is an employer under the KCRA, and Palmer was Boustani's supervisor. (Compl. ¶¶ 27-28).

In moving to remand this matter, Boustani argues that he has asserted a retaliation claim under the KCRA against Palmer in the Complaint.[1] (Pl.'s Mot. Remand 1). Under the KCRA:

> It shall be an unlawful lawful practice for a person, or for two (2) or more persons to conspire:
> (1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter . . . .

KRS 344.280(1). The anti-retaliation provision of the KCRA specifically applies to "persons." KRS 344.280. As the Sixth Circuit has noted, "[t]he Kentucky retaliation statute plainly permits the imposition of liability on individuals." *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000); *see also Ivey v. McCreary Cty. Fiscal Court*, 939 F. Supp. 2d 762, 770 (E.D. Ky. 2013) (holding that KCRA permitted the assertion of retaliation claim against a supervisor).

In the Complaint, Boustani alleges:

> 20. From the first day on the job, it became clear that Palmer disliked Plaintiff. Palmer treated Plaintiff as if he were incompetent because of his Lebanese accent.
> 21. Palmer made numerous derogatory comments regarding Plaintiff's speech and accent. When trying to have a conversation regarding a work[-]related

---

[1] In Boustani's proposed Amended Complaint, he seeks to clarify his retaliation claim against Palmer. (Am. Compl. ¶¶ 43-48, DN 6-1).

> matter, Palmer would tell Plaintiff he needed to learn to "speak English." In addition, Palmer would tell Plaintiff to "go back and learn how to speak and pronounce cat, dog, and mouse."
>
> 22. In or around early March, 2018, Plaintiff reported Palmer's harassment to the labor relations board. Approximately two (2) weeks later, Plaintiff was terminated despite being eight (8) months from eligibility for full retirement benefits.
>
> 23. On March 15, 2018, GM delivered a letter to Plaintiff alleging that he was terminated due to "creating a hostile work environment by engaging in aggressive behavior by yelling repeatedly, pointing [his] finger, and threatening to fire [an employee]." Plaintiff vehemently denied the events described in the letter.
>
> . . .
>
> 26. That Plaintiff reiterates and reaffirms the allegations in Paragraphs 1-25 herein above and further states:
>
> . . .
>
> 28. That at all times relevant herein, Palmer was the supervisor of the Plaintiff.
>
> 29. That Plaintiff was subjected to discriminatory conduct as a result of his national origin.
>
> 30. That as a result of the discriminatory conduct and harassment and/or the reporting of same, Plaintiff's employment was wrongfully terminated.
>
> 31. That as a result of Defendants' conduct, Plaintiff has suffered emotional distress, humiliation, embarrassment, past and future lost earnings, loss of retirement benefits, and loss of fringe benefits, all in excess of this court's jurisdictional minimum.

(Compl. ¶¶ 20-23, 26, 28-31). Thus, Boustani has alleged that he was terminated in retaliation for reporting Palmer's discriminatory conduct less than two weeks after the report was made. Boustani alleges he complained about his treatment by Palmer, that he was terminated and was damaged by Defendants' conduct, which presumably included conduct by Palmer. Giving Boustani the benefit of the doubt as the Court must in considering a claim of fraudulent joinder, Boustani has sufficiently stated a claim of retaliation under the KCRA.[2]

The Court concludes that Boustani has at least articulated a claim against Palmer for retaliation under the KCRA. Accordingly, Palmer was not fraudulently joined in this case because

---

[2] Because the Court has concluded Boustani has stated a claim against Palmer under the KCRA to defeat Defendants' assertion of fraudulent joinder, it is unnecessary to consider the sufficiency of Boustani's IIED and defamation claims.

he has failed to prove that Boustani could not have established a claim against him. Therefore, the Court lacks subject matter jurisdiction over this dispute under 28 U.S.C. § 1332. *See Coyne*, 183 F.3d at 493 (citing *Alexander*, 13 F.3d at 949). The Court will grant the motion to remand.

### B. Remaining Motions

Palmer has moved to dismiss the allegations in the Complaint. (Def.'s Mot. Dismiss, DN 4). Boustani has moved for the Court to hold Palmer's motion in abeyance (DN 7) and for leave to amend the Complaint (DN 8). Because this Court lacks subject matter jurisdiction over this case, the Court will deny these motions as moot.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion to Remand (DN 8) is **GRANTED**, and this case is **REMANDED** to Warren Circuit Court because this Court lacks subject matter jurisdiction over this dispute under 28 U.S.C. § 1332. The Clerk shall strike this case from the active docket.

2. Defendant's Motion to Dismiss (DN 4), Plaintiff's Motion for Leave to Amend Complaint (DN 6), and Plaintiff's Motion for Leave to Hold in Abeyance (DN 7) are **DENIED AS MOOT**.

Greg N. Stivers, Chief Judge
United States District Court

October 8, 2019

cc: counsel of record
Warren Circuit Court, Civil Action No. 19-CI-00137